## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANA NESSEL, Attorney General of the State of Michigan, *ex rel*. THE PEOPLE OF THE STATE OF MICHIGAN,

      *Plaintiff*,

    v.

ROKU, INC.,

      *Defendant*.

Case No.: 2:25-CV-11221-SJM-CI

HON. STEPHEN J. MURPHY, III
MAG. JUDGE CURTIS IVY, JR.

---

## DEFENDANT ROKU, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD THROUGH SEVENTH CAUSES OF ACTION

Defendant Roku, Inc. ("Roku"), by and through counsel, hereby moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Counts Three through Seven of the Complaint by Plaintiff Dana Nessel, Attorney General of the State of Michigan, *ex rel*. The People of the State of Michigan for lack of standing and failure to state a claim.  In support of the foregoing motion, Roku states as follows:

1.    Roku bases this motion upon the accompanying memorandum of law and such other materials as the Court may consider.

2.    As required by Local Rule 7.1(a), counsel for Roku met with Plaintiff's counsel on February 24, 2025, April 17, 2025, and April 22, 2025 to discuss the claims brought by Plaintiff in this action.  Roku was unable to obtain Plaintiff's

concurrence in dismissal of these claims.  The parties have agreed that they have

discussed the legal basis for this motion and complied with Local Rule 7.1(a).


Dated: July 14, 2025                    Respectfully submitted,


                                        By: *s/Victor H. Jih*
                                        Victor H. Jih, CA SBN 186515
                                        Kelly H. Yin, CA SBN 328380
                                        Wilson Sonsini Goodrich & Rosati, P.C.
                                        1900 Avenue of The Stars, 28th Floor
                                        Los Angeles, CA 90067
                                        Telephone: (424) 446-6900
                                        Facsimile: (866) 974-7329
                                        vjih@wsgr.com
                                        kyin@wsgr.com

                                        Brian M. Willen, P75110
                                        Dylan Grace Savage, CA SBN 310452
                                        Wilson Sonsini Goodrich & Rosati, P.C.
                                        1301 Avenue of the Americas
                                        New York, NY 10019-6022
                                        Telephone: (212) 999-5800
                                        Facsimile: (212) 999-5899
                                        bwillen@wsgr.com
                                        dsavage@wsgr.com

                                        *Attorneys for Defendant Roku, Inc.*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANA NESSEL, Attorney General of the
State of Michigan, *ex rel*. THE PEOPLE
OF THE STATE OF MICHIGAN,

       *Plaintiff*,

    v.

ROKU, INC.,

       *Defendant*.

Case No.: 2:25-CV-11221-SJM-CI

HON. STEPHEN J. MURPHY, III
MAG. JUDGE CURTIS IVY, JR.

## MEMORANDUM IN SUPPORT OF DEFENDANT ROKU, INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD THROUGH SEVENTH CAUSES OF ACTION

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED ............................................................. ix

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... x

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    The Roku Platform ................................................................................. 2

    B.    Collection and Use of Roku Users' Data ............................................. 3

ARGUMENT ........................................................................................................ 4

I.     THE COURT SHOULD REJECT THE STATE'S ATTEMPT TO USURP THE DAMAGES CLAIMS OF MICHIGAN RESIDENTS ........... 4

    A.    The Third, Fourth, Sixth and Seventh Claims Do Not Belong to the State, But Seek Relief for Its Residents ......................................... 4

    B.    The State, as *Parens Patriae*, Cannot Litigate Residents' Claims .................................................................................................... 5

    C.    Mass Adjudication Without Procedural Safeguards Opens a Pandora's Box of Problems .................................................................. 7

II.    THE THIRD AND FOURTH CAUSES OF ACTION FAIL TO ALLEGE A VPPA/PPPA VIOLATION ................................................. 8

    A.    Conclusory Allegations Fail to State a Valid Claim for Relief ........... 9

    B.    The State Fails to Allege Disclosure of PII ......................................... 9

    C.    The State Fails to Plead Disclosure of Personal Watch History ........ 13

III.   THE FIFTH CAUSE OF ACTION FAILS TO ALLEGE AN MCPA VIOLATION ............................................................................................. 15

    A.    The State Fails to Allege any Violation of Subsections (n) or (t) ...... 15

    B.    The State Fails to Allege Violations of Subsections (c), (cc), and (s) ................................................................................................ 16

IV.   THE SIXTH CAUSE OF ACTION FAILS TO ALLEGE A CLAIM FOR INTRUSION UPON SECLUSION ................................................... 19

A.   Intrusion Does Not Accrue from The Alleged Statutory Violations .................................................................................. 19

B.   Roku Is Not Secondarily Liable for Intrusion, Either ........................ 21

V.   THE SEVENTH CAUSE OF ACTION FAILS TO ALLEGE A CLAIM FOR UNJUST ENRICHMENT ...................................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## CASES

*Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987) ............................................................6

*Afriyie v. NBCUniversal Media, LLC*,
    2025 WL 962033 (S.D.N.Y. Mar. 31, 2025)...................................12

*Alfred L. Snapp & Son, Inc. v. P.R*,
    458 U.S. 592 (1982)..........................................................................5

*Ass'n of Am. Physicians & Surgs. v. FDA*,
    13 F.4th 531 (6th Cir. 2021) ............................................................4

*Barber v. SMH (US), Inc.*,
    202 Mich. App. 366 (1993) .............................................................22

*Bell v. Wayne County General Hospital At Elois*,
    384 F. Supp. 1085 (E.D. Mich. 1974) .............................................7

*Boelter v. Advance Mag. Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016) .............................................8

*Bozung v. Christianbook, LLC*,
    2023 WL 2385004 (W. D. Mich. Mar. 6, 2023) .............................8

*Brady v. Chase Home Fin.*,
    LLC, 2012 WL 1900606 (W.D. Mich. May 24, 2012) .................19

*Burniac v. Wells Fargo Bank, N.A.*,
    2015 WL 401018 (E.D. Mich. Jan. 28, 2015) .........................15, 19

*California v. Frito-Lay, Inc.*,
    474 F.2d 774 (9th Cir. 1973) ........................................................6, 7

*Chapman v. Tristar Prods., Inc.*,
    940 F.3d 299 (6th Cir. 2019) ...........................................................5

*Charvat v. DFS Servs. LLC*,
    781 F. Supp. 2d 588 (S.D. Ohio 2011) ..........................................15

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)........................................................................4

*Doe v. Mills*,
    212 Mich. App. 73, 536 N.W.2d 824 (1995) .................................20

*Ealey v. Benjigates Ests., LLC*,
    2013 WL 6409987 (E.D. Mich. Dec. 9, 2013) ..............................15

*Edwards v. Learfield Commc'ns, LLC*,
    697 F. Supp. 3d 1297 (N.D. Fla. 2023) .........................................11

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ...................................9, 10, 11, 12, 20

*El Camino Res. Ltd. v. Huntington Nat. Bank*,
    712 F.3d 917 (6th Cir. 2013) .........................................................21

*Farst v. AutoZone, Inc.*,
    700 F. Supp. 3d 222 (M.D. Penn. Nov. 1, 2023)..........................20

*Fremont Reorganizing Corp. v. Duke.*,
    811 F. Supp. 2d 1323 (E.D. Mich. 2011) .....................................21

*Garback v. Lossing*,
    2010 WL 3733971 (E.D. Mich. Sept. 20, 2010) ..........................20

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................7

*Ghanaat v. Numerade Labs, Inc.*,
    689 F. Supp. 3d 714 (N.D. Cal. 2023)..........................................12

*Glasgow v. Beers*,
    2024 WL 1210790 (N.D. Ohio Mar. 20, 2024)..............................6

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022).........................................20

*Haw. v. Standard Oil Co. of Cal.*,
    405 U.S. 251 (1972)........................................................................8

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ..........................20, 22

*Hughes v. Nat'l Football League*,
     2025 WL 1720295 (2d Cir. June 20, 2025)......................................................12

*In re Alphabet Derivative S'holder Litig.*,
     2022 WL 104562 (N.D. Cal. Apr. 7, 2022)......................................................18

*In re Am. Med. Sys., Inc.*,
     75 F.3d 1069 (6th Cir. 1996) ..........................................................................8

*In re Auto. Parts Antitrust Litig.*,
     2021 WL 148004 (E.D. Mich. Jan. 15, 2021) ................................................6

*In re Google Location Hist. Litig.*,
     428 F. Supp. 3d 185 (N.D. Cal. 2019)............................................................20

*In re Hulu Priv. Litig.*,
     86 F. Supp. 3d 1090 (N.D. Cal. 2015)............................................................13

*In re Hulu Priv. Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)....................10

*In re Nickelodeon Consumer Priv. Litig.*,
     2014 WL 3012873 (D.N.J. July 2, 2014) ................................................8, 11

*In re Nickelodeon Consumer Privacy Litig.*,
     827 F.3d 262 (3d Cir. 2016) ....................................................................10, 11

*Innovation Ventures, L.L.C. v. Aspen Fitness Prods., Inc.*,
     2015 WL 11071470 (E.D. Mich. Mar. 31, 2015)..........................................16

*Int'l Bhd. of Elec. Workers, Loc. Union No. 58 v. McNulty*,
     214 Mich. App. 437 (1995) ............................................................................17

*Kelley v. Carr*,
     442 F. Supp. 346 (W.D. Mich. 1977)..............................................................6

*Krakauer v. Dish Network, L.L.C.*,
     925 F.3d 643 (4th Cir. 2019) ..........................................................................7

*Kussy v. Home Depot U.S.A. Inc.*,
     2006 WL 3447146 (E.D. Mich. Nov. 28, 2006) ...........................................19

*Leaf v. Nike, Inc..*,
     2020 WL 12230315 (E.D. Mich. Nov. 23, 2020) .........................................17

*Leaf v. Refn*,
     742 F. App'x 917 (6th Cir. 2018)..................................................................17

*Lesatz v. Standard Green Meadows*,
    164 Mich. App. 122 (1987) ........................................................................16

*Lin v. Crain Commc'ns Inc.*,
    2020 WL 248445 (E.D. Mich. Jan. 16, 2020) .................................................8

*Lovett v. Continued.com, LLC*,
    2025 WL 1809719 (S.D. Ohio July 1, 2025) .....................................9, 13, 14

*Magda v. Auto. Club Ins. Ass'n*,
    2015 WL 13036945 (E.D. Mich. Apr. 28, 2015) .........................................16

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023) ....................................................13, 14

*Mays v. Universal Utilities, Inc.*,
    2022 WL 1592374 (Mich. Ct. App. May 19, 2022)......................................16

*Mendoza v. Microsoft Inc.*,
    2014 WL 4540213 (W.D. Wash. Sept. 11, 2014) ..........................................9

*Mo. Ex rel. Koster v. Harris*,
    847 F.3d 646 (9th Cir. 2017) .................................................................6

*Nashel v. New York Times Co.*,
    2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)............................................13

*Ohio v. GMAC Mort., LLC*,
    760 F. Supp. 2d 741 (N.D. Ohio 2011) ..........................................................6

*Pacheco v. Boar's Head Provisions Co.*,
    2010 U.S. Dist. LEXIS 30463 (W.D. Mich. Mar. 30, 2010) .......................22

*Perry v. Cable News Network, Inc.*,
    2016 WL 4373708 (N.D. Ga. Apr. 20, 2016)...............................................10

*Pfizer, Inc. v. Lord*,
    522 F.2d 612 (8th Cir. 1975) ..........................................................................6

*Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,
    309 F. Supp. 1057 (E.D. Pa. 1969).................................................................8

*Roane Cnty, Tennessee v. Jacobs Engineering Group, Inc.*,
    429 F.Supp.3d 494 (E.D. Tenn. 2019) ............................................................7

*Robinson v. Disney Online*,
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ........................................................... 11

*Rover Pipeline LLC v. Zwick*,
  2022 WL 17336502 (6th Cir. Nov. 30, 2022) .................................................. 4

*Ruffin-Steinback v. dePasse*,
  82 F. Supp. 2d 723 (E.D. Mich. 2000) ......................................................... 22

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601 (E.D. Mich. 2017) ....................................................... 22

*Shapiro v. Peacock TV*,
  2025 WL 968519 (S.D.N.Y. Mar. 31, 2025) .................................................. 14

*Solomon v. Flipps Media, Inc.*,
  136 F.4th 41 (2d Cir. 2025) ........................................................ 9, 10, 12, 14

*Stephens v. Availity, L.L.C.*,
  2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) ................................................ 18

*Theriot v. Woods*,
  2010 WL 623684 (W.D. Mich. Feb. 18, 2010) .............................................. 21

*Tobin v. Civil Serv. Comm'n*,
  416 Mich. 661 (1982) ................................................................................... 20

*Visser v. Carib. Cruise Lines, Inc.*,
  2024 WL 12921353 (W.D. Mich. Apr. 4, 2014) ............................................ 15

*Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*,
  2022 WL 706929 (M.D. Tenn. Mar. 8, 2022) ............................................... 15

*Wheaton v. Apple Inc.*,
  2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ............................................... 13

*Yershov v. Gannett Satellite Info. Network, Inc.*,
  820 F.3d 482 (1st Cir. 2016) .................................................................. 10, 12

## STATUTES

11 CCR § 7000 *et seq.* ........................................................................................ 18

15 U.S.C. § 6501 ........................................................................................... 1, 18

15 U.S.C. § 6502 ............................................................................................... 18

15 U.S.C. § 6504 ................................................................................................4

18 U.S.C. § 2710(a)(1) .......................................................................................4

Cal. Civ. Code 1798.135(a)(1) ..........................................................................18

M.C.L. § 445.903(1) ...................................................................................15, 16

M.C.L. § 445.905 ...............................................................................................4

M.C.L. § 445.1711 .............................................................................................4

## STATEMENT OF ISSUES PRESENTED

1.  Does the State have *parens patriae* standing to bring damages claims for violations of the VPPA and PPPA, common law intrusion, and unjust enrichment on behalf of millions of unspecified Michigan residents?

2.  Has the State sufficiently alleged the disclosure of personally identifying information along with the specific video titles watched by that person, both in the same transmission, to state a valid VPPA or PPPA claim?

3.  Do any of the misrepresentations alleged with particularity in the Complaint violate subsections (n), (t), (c), (cc), or (s) of the MCPA?

4.  Can the State claim common law intrusion upon seclusion based on the alleged improper use and disclosure of information in violation of COPPA, VPPA/PPPA, or the MCPA?  Alternatively, can the State hold Roku secondarily liable for aiding and abetting a third-party's intrusion, without alleging that Roku knew about or proximately caused that misconduct?

5.  Has the State pled a valid independent claim for unjust enrichment when it does not allege any direct benefit that the State conferred to Roku or that Roku improperly obtained from the State?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

### Issue 1—*Parens Patriae* Standing

*Alfred L. Snapp & Son, Inc. v. P.R.*, 458 U.S. 592 (1982)

*Chapman v. Tristar Prods., Inc.*, 940 F.3d 299 (6th Cir. 2019)

*Kelley v. Carr*, 442 F. Supp. 346 (W.D. Mich. 1977)

*Ohio v. GMAC Mort., LLC*, 760 F. Supp. 2d 741 (N.D. Ohio 2011)

*In re Auto. Parts Antitrust Litig.*, 2021 WL 148004 (E.D. Mich. Jan. 15, 2021)

*Roane Cnty. v. Jacobs Eng'g Grp., Inc.*, 429 F. Supp.3d 494 (E.D. Tenn. 2019)

### Issue 2—VPPA/PPPA

18 U.S.C. § 2710

M.C.L. §§ 445.1711-15

*Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025)

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016)

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017)

*Perry v. Cable News Network, Inc.*, 2016 WL 4373708 (N.D. Ga. Apr. 20, 2016)

*Lovett v. Continued.com, LLC*, 2025 WL 1809719 (S.D. Ohio July 1, 2025)

*Martin v. Meredith Corp.*, 657 F. Supp. 3d 277 (S.D.N.Y. 2023)

### Issue 3—MCPA

M.C.L. §§ 445.903

*Visser v. Carib. Cruise Lines. Inc.*, 2014 WL 12921353 (W.D. Mich. Apr. 4, 2014)

*Ealey v. Benjigates Ests., LLC*, 2013 WL 6409987 (E.D. Mich. Dec. 9, 2013)

*Mays v. Universal Util., Inc.*, 2022 WL 1592374 (Mich. Ct. App. May 19, 2022).

*Innovation Ventures, L.L.C. v. Aspen Fitness Prods., Inc.*, 2015 WL 11071470 (E.D. Mich. Mar. 31, 2015)

*Int'l Bhd. of Elec. Workers, Local No. 58 v. McNulty*, 214 Mich. App. 437 (1995)

*In re Alphabet Deriv. S'holder Litig.*, 2022 WL 1045642 (N.D. Cal. Apr. 7, 2022)

## Issue 4—Intrusion Upon Seclusion

*Tobin v. Civil Serv. Comm'n*, 416 Mich. 661 (1982)

*Bradley v. Smith*, 2023 WL 6302999 (E.D. Mich. Sept. 27, 2023)

*Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222 (M.D. Penn. 2023)

*Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024)

*Theriot v. Woods*, 2010 WL 623684 (W.D. Mich. 2010)

## Issue 5—Unjust Enrichment

*Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723 (E.D. Mich. 2000)

*Pacheco v. Boar's Head Provisions Co.*, 2010 U.S. Dist. LEXIS 30463 (W.D. Mich. Mar. 30, 2010)

*Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601 (E.D. Mich. 2017)

*Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024)

## **INTRODUCTION**

The Michigan Attorney General (the "State") filed this lawsuit claiming that Roku "systematically collects and processes, and allows third parties to collect and process, children's personal information" in violation of the Children's Online Privacy Protection Act, 15 U.S.C. § 6501 (COPPA).  ECF 1, PgID 2 ¶ 2.  That premise is false and those claims have no merit.  Still, these fact disagreements cannot be resolved on the pleadings, and Roku's vindication must wait.

This Motion targets the State's other claims for the Video Privacy Protection Act (VPPA), Preservation of Personal Privacy Act (PPPA), Michigan Consumer Protection Act (MCPA), intrusion upon seclusion, and unjust enrichment.  These tacked-on claims can be decided now.  Their defects are clear from the pleadings.

As a threshold matter, these non-COPPA claims do not belong to the State. Except for the MCPA, the State does not assert claims in its own right—the State does not claim that its video watch history was disclosed, it was misled, its affairs intruded upon, or there is unjust enrichment at its expense.  Instead, it asserts these claims for its residents.  The State invokes *parens patriae*, an exception to the cardinal rule of standing that a litigant must bring its own claims.  That exception, however, is limited and has typically been permitted only for claims for equitable relief.  It does not give the State plenary authority to usurp residents' damages claims.  The State's attempt to expand *parens patriae* is unprecedented and opens a Pandora's box of mass and representative adjudication without any established safeguards, assurance of accuracy, or promise of due process.

These claims, as pled, also fail as a matter of law.  The third and fourth claims (VPPA and PPPA) fail to allege specifics of how and whether any Michigan resident's personal video watch history was disclosed.  The fifth claim (MCPA) fails to plead with particularity any misrepresentation actionable under the five subsections.  The sixth claim (intrusion) fails as it is based on the alleged misuse and disclosure of data rather than any objectionable collection.  Nor can the State fashion an intrusion claim based on third-party misconduct when it alleges no facts about Roku that warrant secondary liability.  Finally, the seventh claim (unjust enrichment) fails to the extent it is derived from invalid claims and cannot identify anything Roku unjustly took from the State.  The Court should dismiss them now.

## FACTUAL BACKGROUND

### A.    The Roku Platform

Roku operates an online streaming platform.  ECF 1, PgID 4 ¶ 13.  Roku offers its own streaming app, called The Roku Channel ("TRC"), as well as access to third-party apps from providers like Disney+ and Max.  *Id.* ¶¶ 14-15.  Some apps (like TRC) are free with ad-supported content, while others require a paid subscription purchased from third parties on or outside the platform.  *See id.*, PgID 6 ¶ 19.  The platform may be accessed using a streaming stick and on Roku-enabled smart devices; TRC content can also be accessed on Roku's website.

A registered account is not required to access free video content on the TRC website.  Still, Roku requires registration for an account to activate and set up any Roku device, to watch videos on the Roku mobile application, and to purchase and manage premium subscriptions.  To create an account, users must be at least 18,

agree to Roku's terms, and provide their information such as name, email address, and birth date.  *See id.*, PgID 21 ¶¶ 56, 59, PgID 23-24 ¶ 63, PgID 27 ¶ 71-72.  Roku does not currently offer options for sub-accounts or profiles.  *Id.* ¶ 71.

Account holders may permit others, such as household members, to use the devices used for their Roku account.  *See* ¶¶ 71-72.  These individuals can include other adults, older teens, and even younger children who may be permitted to do so or assisted by their parents.  Roku does not know the identity of these other users.

### B.       Collection and Use of Roku Users' Data

Roku collects and uses data to operate its online platform.  This is needed to operate Roku's service—for example, to deliver the content requested, to personalize the experience, and to maintain preferences and settings.

Roku accounts do not have separate user profiles.  If an accountholder shares their Roku devices, Roku cannot distinguish actions taken by the account holder as opposed to someone else, let alone a child under the age of 13.  *Id.* PgID 12 ¶ 32, PgID 27 ¶¶ 71-72.  Usage data collected from these user interactions is associated with the account without any attempt to differentiate between individual users.

As an ad-supported platform, Roku uses industry-standard tools from third parties such as pixels and cookies.  *Id.*, PgID 4-5 ¶ 16, PgID 31 ¶ 79.  These tools deliver and measure the effectiveness of ads served on Roku.  *Id.*  Roku works with measurement partners, such as Kochava, on common advertising-related functions, such as attributing off-platform actions to a particular ad campaign on Roku.  *Id.*, PgID 32-33 ¶¶ 83-84.  This data sharing is commonplace to modern online platforms—often involving URLs, IP addresses, alphanumeric identifiers, and

device and browser data. These practices are explained in Roku's Privacy Policy. *See id.*, PgID 23-25 ¶¶ 63, 65, 66, PgID 30-32 ¶¶ 78, 80, 83.

## ARGUMENT

**I.   THE COURT SHOULD REJECT THE STATE'S ATTEMPT TO USURP THE DAMAGES CLAIMS OF MICHIGAN RESIDENTS**

### A.   The Third, Fourth, Sixth and Seventh Claims Do Not Belong to the State, But Seek Relief for Its Residents

It is axiomatic that a party must bring their own claims—a party "cannot rest his claim to relief on the legal rights or interests of third parties." *Rover Pipeline LLC v. Zwick*, 2022 WL 17336502, *4 (6th Cir. Nov. 30, 2022). Exceptions to this rule are limited and intentionally narrow. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (rule is "fundamental"); *Ass'n of Am. Physicians & Surgs. v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021) (strict limits on bringing claims for others).

Excepting COPPA and MCPA,[1] the claims asserted here do not belong to the State. The State readily admits the claims are made on behalf of its residents:

- The Third and Fourth claims are brought on behalf of Michigan users. ECF 1, PgID 48 ¶¶ 141, 146. The State claims no rights of its own as a "renter, purchaser, or subscriber," 18 U.S.C. § 2710(a)(1) (VPPA), nor as one "who purchases, rents, or borrows" a video recording. M.C.L. § 445.1711 (PPPA).

---

[1] COPPA permits states to sue on behalf of residents who lack a private right of action. *See* 15 U.S.C. § 6504. For the MCPA, only the State's Attorney General can seek the civil penalties requested here. *See* M.C.L. § 445.905.

- The Sixth claim, intrusion, is based on "collection, retention, and disclosure" of "personal information of Michigan residents." *Id.*, PgID 51 ¶¶ 160, 165. The State does not allege collection of its own data.

- The Seventh claim alleges unjust enrichment from "personal information" of Michigan residents (not the State's information). *Id.*, PgID 52-53 ¶¶ 175, 178.

In short, these claims seek to "enforce the privacy rights and consumer protections guaranteed to Michigan residents[.]" *Id.*, PgID 43 ¶ 108. The State purports to bring them on behalf of "millions" of users residing in Michigan. *Id.*, PgID 2 ¶ 1.

## B. The State, as *Parens Patriae*, Cannot Litigate Residents' Claims

*Parens patriae* is a common law doctrine that permits limited circumstances for states to enforce their "quasi-sovereign interests." *Alfred L. Snapp & Son, Inc. v. P.R.*, 458 U.S. 592, 593 (1982). It does not allow "the sovereign to legally step into the shoes of its individual citizens." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 305 (6th Cir. 2019). The "[i]nterests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Snapp*, 458 U.S. at 602. The state advances no quasi-sovereign interest when its claims are "indistinguishable" from those that residents could bring themselves. *Chapman*, 940 F.3d at 305, 306.

The Complaint fails to identify any quasi-sovereign interest. This case is no different than many others involving courts' refusal to recognize *parens patriae* standing. It is like *Chapman*, where Arizona could not intervene *parens patriae* to raise settlement objections "indistinguishable" from those that class members could craft; even if the lawsuit involved defective pressure cookers risking residents'

health and safety.  940 F.3d at 306.  It is also like *Ohio v. GMAC Mort., LLC*, where Ohio lacked *parens patriae* standing to sue for homeowners facing improper foreclosure.  760 F. Supp. 2d 741, 750 (N.D. Ohio 2011).  It is similar to *In re Auto. Parts Antitrust Litig.*, where the Court disapproved of Puerto Rico's *parens patriae* arguments despite "economic harm" to an "identifiable group of individual residents" who bought affected products.  2021 WL 148004, *3-4 (E.D. Mich. Jan. 15, 2021); *see also Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017) (no *parens patriae* standing where "complete relief" available to private parties).

The rule that emerges is clear—*parens patriae* does not permit the State to bring the damages claims of its residents.  The Circuit Courts of Appeal overwhelmingly agree.  For example, the Second Circuit has held there is no *parens patriae* standing to recover any "monetary award … solely for injury to the business and property of the state's citizens." *Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987).  The Eighth Circuit has rejected *parens patriae* actions "to collect the damages claim of one legally entitled to sue in his own right." *Pfizer, Inc. v. Lord*, 522 F.2d 612, 616 (8th Cir. 1975), *superseded on other grounds*.  The Ninth Circuit has recognized that permitting such actions would be "a substantial departure from the scope of *parens patriae* authority." *Cal. v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973), *superseded on other grounds*.

Though the Sixth Circuit has not yet provided explicit guidance, its district courts have also rejected states using *parens patriae* to "prosecute purely personal claims of [] citizens." *Kelley v. Carr*, 442 F. Supp. 346, 352, 356-57 (W.D. Mich. 1977), *rev'd on other grounds*; *Glasgow v. Beers*, 2024 WL 1210790, *4 (N.D. Ohio

Mar. 20, 2024); *Roane Cnty., Tenn. v. Jacobs Eng'g Grp., Inc.*, 429 F. Supp. 3d 494, 496 (E.D. Tenn. 2019). *Parens patriae* would be unprecedented here.

### C. Mass Adjudication Without Procedural Safeguards Opens a Pandora's Box of Problems

The State's proposed *parens patriae* action would create an adjudicative nightmare. "The joining of the claims of numerous, dispersed claimants in a single judicial action is inherently complicated and requires safeguards if injustice is to be avoided." *Frito-Lay*, 474 F.2d at 777 n.11. This case creates a "problem" because the State seeks to adjudicate "millions" of claims in a proceeding where the class action safeguards of Rule 23 are "absent." *Id.* at n.9.

It remains unclear how these claims will be correctly adjudicated. With no representative plaintiff, no specifics for any person's claim, and no showing that adjudicating "millions" of claims by a representative is possible, risk of windfall and wrongful denial is great. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019) (Rule 23 "ensure[s] vigorous adversarial process").

Nor is it clear how the Court will ensure fairness. A state acting as *parens patriae* retains "the inescapable duty to vouchsafe due process." *Bell v. Wayne Cnty. Gen. Hosp. at Elois*, 384 F. Supp. 1085, 1093 (E.D. Mich. 1974). That is hard to guarantee when there is no clear workable process. Every actual claimant remains absent and the State's ability to represent their interests proceeds untested. *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Roku is forced to defend against headless claims with no representative to attack, specific facts to contest, or claimants to cross-examine.

Reaching a final judgment introduces more problems. *Parens patriae* suits "present complex and difficult administrative problems," including "notice and other safeguards or the binding effect on absent class members." *Phila. Hous. Auth. v. Am. Radiator & Sanitary Corp.*, 309 F. Supp. 1057, 1062 (E.D. Pa. 1969). Guardrails like a workable class definition are "essential to due process." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Without delineating exactly whose claims are adjudicated, the preclusive effect of any judgment is indeterminate. It is not clear what procedures will address risks of double recovery if individuals bring their own claims. *See Haw. v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 (1972), *superseded by statute*. Recovery would be also remitted to the State and diminished by outside counsel fees.

## II. THE THIRD AND FOURTH CAUSES OF ACTION FAIL TO ALLEGE A VPPA/PPPA VIOLATION

The VPPA and the PPPA are the federal and Michigan statutes that protect the video privacy of consumers. Their claims have similar elements. *See Lin v. Crain Commc'ns Inc.*, 2020 WL 248445, *2 (E.D. Mich. Jan. 16, 2020) (PPPA's aims match the VPPA's); *Boelter v. Advance Mag. Publ'rs Inc.*, 210 F. Supp. 3d 579, 590 (S.D.N.Y. 2016) (harms for both are "essentially the same"). The claim requires disclosure of information identifying (1) a person and (2) the specific video titles they requested or obtained. *See In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) (VPPA); *Bozung v. Christianbook, LLC*, 2023 WL 2385004, *6 (W. D. Mich. Mar. 6, 2023) (PPPA).

The State brings claims involving Google, New Relic, Innovid, Tremor, Meta, LinkedIn, and Nextdoor.[2] ECF 1, PgID 13-14, 29-31 ¶¶ 36-38, 76-80. All fail.

### A. Conclusory Allegations Fail to State a Valid Claim for Relief

"[F]ormulaic recitations" of the VPPA/PPPA's elements do not state a claim. *Mendoza v. Microsoft Inc.*, 2014 WL 4540213, *3 (W.D. Wash. Sept. 11, 2014). Pleadings "devoid of any details about **how**" the purported disclosure identifies a person and their video watch history can be dismissed. *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54 (2d Cir. 2025). Specifics, like an "exemplar screenshot" of the "information transmitted," are necessary and are the proper focus of the Court's pleadings evaluation. *Id.*; *Lovett v. Continued.com, LLC*, 2025 WL 1809719, *3-4 (S.D. Ohio July 1, 2025) (detailed allegations are needed to plead disclosure of "names **and** URLs of the **specific** videos accessed") (*emphasis in original*).

The State purports to bring claims concerning LinkedIn and Nextdoor, but alleges no facts for either. Its pleading merely parrots the statutory elements, claiming disclosure of "personally identifiable information" and "URLs containing the title of videos users have viewed." That does not plead a valid claim.

### B. The State Fails to Allege Disclosure of PII

There are two tests to determine if a disclosure is identifying. The majority test asks whether an "ordinary person" (not a technical expert) could readily use the information disclosed to identify a particular person. *Solomon*, 136 F.4th at 52-53 (2nd Cir. 2025); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *In*

---

[2] Tremor is omitted from the claims (*see* ECF 1, PgID 48-49 ¶¶ 141, 148) but still addressed here since the State includes a screenshot. *Id.*, PgID 14 ¶ 38.

*re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 283 (3d Cir. 2016). Information that "cannot identify an individual unless it is combined with other data" fails this test. *Eichenberger*, 876 F.3d at 986. The minority test (from the First Circuit) asks whether it was "reasonably foreseeable" that the recipient could identify an individual from the disclosure. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). The Sixth Circuit has not picked a test, though most courts have found that the "ordinary person" test comports more closely with statutory text and legislative intent; it also better informs providers of their obligations. *See Solomon*, 136 F.4th at 49-54; *Eichenberger*, 876 F.3d at 985.

The Court is not required to choose a test in order to resolve the claims here. The State's sample disclosures all concern alphanumeric identifiers, not real names or addresses. *See* ECF 1, PgID 13 ¶¶ 36 ("personal information" in "a=63612354"); PgID 29 ¶ 76 (same with "cid=" and "uid="); PgID 13 ¶ 37 (same with "geo_lat" and "geo_lon"); PgID 31 ¶ 79 ("Facebook ID"); PgID 14 ¶ 38 ("lat=" and "lon="). Such disclosures fail either test.

This information is not "identifying" under the "ordinary person" test. First, the "anonymous string of numbers" is used to obscure, not reveal, a person's identity.[3] *See Perry v. Cable News Network, Inc.*, 2016 WL 4373708, *4 (N.D. Ga. Apr. 20, 2016). The Michigan legislature concurred when it amended the PPPA's

---

[3] Courts refer to "anonymized data" as data that is obscured to prevent third parties from easily using it to identify an actual person. *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014) ("anonymous identification data alone is not PII"). "Static digital identifiers" are considered "anonymous pieces of data" even if they could be used by some to "identify web users in the real world." *See In re Nickelodeon*, 827 F.3d at 280, 290.

definition of "PII". *See* S.B. No. 490, 2015 Leg., 2nd Sess. (Mich. 2016) (excluding information "that has been aggregated or has been processed … to prevent its association with an identifiable customer").

Second, an ordinary person would not find or know how to use these codes to identify someone. For them, "a digital code in a cookie file would likely be of little help in trying to identify an actual person." *Nickelodeon*, 827 F.3d at 283. They would not know if a code identifies a ***person***, device, account, browser, or some network location. *See Nickelodeon*, 2014 WL 3012873, *10; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) (Roku serial number identifies device, not person); *Eichenberger*, 876 F.3d at 985 (same).

Third, identification requires purposeful effort. Because further steps and sources are needed to decipher who the information identifies, it is not PII. *See id.* at 986. For example, the Complaint alleges an instance where "geolocation information" was shared with Innovid and Tremor. Yet, this information identified no actual person or residence, but instead pointed to a public park in St. Louis Missouri and the Chicago River. *See* ECF 1, PgID 13-14 ¶¶ 37-38.

The State highlights Meta Pixel as a clear violation. It alleges Facebook ID can be used to find "that person's Facebook account." *Id.*, PgID 31 ¶ 79. The State does not allege ***how*** other than it is "simple enough for any ordinary person to complete." *Id.* That is not enough—specifics about the disclosure mechanism are necessary no matter how simple the State says it may be. *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1308 (N.D. Fla. 2023) (requiring "facts on

how Facebook accesses th[e] metadata, why doing so does not require technical expertise, or how much metadata Facebook has to comb through").

If anything, Facebook ID is a clear example of non-PII.  The Second Circuit recently applied the "ordinary person" test and rejected a VPPA claim based on the disclosure of Facebook ID.  *See Solomon*, 136 F.4th at 46, 54.  It was not "plausible" that an "ordinary person," without assistance or annotation, would find the Facebook ID "embedded in many other lines of code" and use it, without great effort, to identify anyone.  *Id.*  Post-*Solomon* decisions have acknowledged that this authority "effectively shut the door for Pixel-based VPPA claims."[4]  *Hughes v. Nat'l Football League*, 2025 WL 1720295, *2 (2nd Cir. June 20, 2025).

The same result holds under the "reasonably foreseeable" test.  This test also requires specific allegations explaining how the recipient can use the code to identify someone.  *Eichenberger*, 876 F.3d at 986.  In *Yershov*, plaintiff met this test by alleging the recipient had a "game program" to link disclosures "to a certain person by name, address, phone number, and more."  *Yershov*, 820 F.3d at 486.  The State pleads no comparable specifics about recipients here beyond "too much yet-to-be-done, or unforeseeable detective work."[5]  *Id.*

---

[4] Even if Facebook ID disclosed a profile page, that is not "identifying" unless the name, email address or similar information appears on that page.  *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Afriyie v. NBC Universal Media, LLC*, 2025 WL 962033, *12-13 (S.D.N.Y. Mar. 31, 2025).

[5] The State also alleges "[u]pon information and belief" that Roku shares users' names, addresses, email addresses, precise geolocation, IP addresses, and user IDs (not video titles) to third party tracking companies."  ECF 1, PgID 30-31 ¶¶ 78, 80.  This part of Roku's Privacy Policy does not apply to Michigan (*see* infra pp. 19-21), and the portions that do apply generally to users discloses the data Roku shares with "service providers" for "analytics purposes" which are both detailed in

C.      **The State Fails to Plead Disclosure of Personal Watch History**

Disclosing personally identifying information alone fails to state a VPPA or PPPA claim.  Both require that PII be disclosed ***together*** with that person's video watch history.  It is "not disclosure of the plaintiff's [PII] that establishe[s] VPPA liability," but the "bundling" of PII with video watch history.  *Lovett*, 2025 WL 1809719, *4; *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023).  The bundle must be sent in a single disclosure.  *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015) (no claim when "transmitted separately"); *Wheaton v. Apple Inc.*, 2019 WL 5536214, *4 (N.D. Cal. Oct. 25, 2019) (PPPA).

The State's allegations on this issue are anemic.  For Innovid and Tremor, there are no allegations about video titles at all.  *See* ECF 1, PgID 13-14 ¶ 37 (video title, "A Monster In Paris," not in the screenshot); ¶ 38 ("Garfield Gets Real," not in the screenshot).  For Meta Pixel, the State offers speculation but no facts.  It alleges the Meta Pixel somehow "link[s]" a user's Roku activity to a Facebook ID, but does not allege how.  This makes it impossible to determine if specific video titles are bundled with the identifying information.  For LinkedIn and Nextdoor, the State merely recites the elements.  *See id*. PgID 31 ¶¶ 79-80.

That leaves Google and New Relic.  Both examples rely on video titles in the URLs of particular webpages.  *Id*., PgID 13 ¶ 36, PgID 29-30 ¶¶ 76-77, PgID 48-49 ¶¶ 143, 148.  What these URLs disclose is unclear.  The mere presence of a video

---

the Policy.  *See Nashel v. N.Y. Times Co.*, 2022 WL 6775657 *5 (E.D. Mich. Oct. 11, 2022) (Murphy, J.) (privacy policy "shows only that Defendant might disclose information in the future, not that any information was plausibly disclosed").

title in a URL does not mean a user watched that particular video. *See Martin*, 657 F. Supp. 3d at 284-85 (webpage could contain "an article on the page" about the title); *Shapiro v. Peacock TV*, 2025 WL 968519, *10 (S.D.N.Y. Mar. 31, 2025) (user browsing "episode lists" does not mean the episodes were requested or watched). For New Relic, this is deficient: a person on a webpage with a URL containing "caillous-holiday-movie" may watch that movie, or they may decide not to after reviewing the title's "details" page and selecting other videos linked to and recommended on that same page. ECF 1, PgID 13 ¶ 36. The Google examples are similarly deficient and references to "analytics.google.com" appear to point to code for third-party ad services. *Id.*, PgID 29-30 ¶¶ 76-77. Reference to "**Watch** %20**Walker**%2C%20**Ranger**%20%20S4%3AE1%20**Blown**%20**Apart**%20(1995) %20**Online**%20**for**%20**Free**%20%7C%20**The**%20**Roku**%20**Channel**%20%7C% 20**Roku**" suggests an online ad for that title, not someone's video watch history.

The State fails to allege any actionable disclosure under either test. Ordinary people do not look for titles buried in long strings of characters, numbers, and letters, nor would they be able to discern from them who watched, considered, advertised, rejected, or ignored a title. *Solomon*, 136 F.4th at 54. A court in this Circuit recently confirmed the same result would hold under both the "ordinary person" and "reasonably foreseeable" tests. "[B]oth standards limit [a VPPA claim] to information that will allow a third-party to determine what videos a person has watched," and the State's examples fail that requirement. *Lovett*, 2025 WL 1809719, *3; *Martin*, 657 F. Supp. 3d at 284 (more facts needed like "whether the webpage [linked] contains a video" or menu of videos, "the name of the specific video

materials on the page", and "whether the website visitor 'requested or obtained' any videos at all" or accessed a page with details about a video title).

## III.   THE FIFTH CAUSE OF ACTION FAILS TO ALLEGE AN MCPA VIOLATION

The MCPA prohibits certain enumerated practices.  *See* M.C.L. § 445.903(1). It is not a "borrowing" statute; thus, one cannot plead an MCPA claim based solely on the violation of another law.  *See Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, 2022 WL 706929, *5 (M.D. Tenn. Mar. 8, 2022) (no claim under analogous statute based on TICA violations); *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 594 (S.D. Ohio 2011) (similar).

The State believes Roku violated five MCPA provisions:  subsections (n), (t), (c), (cc), and (s).  For each, the State must plead the misrepresentations with particularity and meet common law requirements for fraud.  *See Visser v. Carib. Cruise Lines. Inc.*, 2014 WL 12921353, *15 (W.D. Mich. Apr. 4, 2014); *Burniac v. Wells Fargo Bank, N.A.*, 2015 WL 401018, *17-18 (E.D. Mich. Jan. 28, 2015).

### A.    The State Fails to Allege any Violation of Subsections (n) or (t)

Subsection (n) proscribes misrepresentations that cause "confusion or misunderstanding as to the legal rights" of a party to a transaction.  The State never alleges a representation by Roku "concerning the legal rights" of Michigan residents, let alone its falsity.  *Ealey v. Benjigates Ests., LLC*, 2013 WL 6409987, *7 (E.D. Mich. Dec. 9, 2013); ECF 1, PgID 49-50 ¶¶ 152-53.

Subsection (t) proscribes transactions where a consumer waives a legal right without the waiver being "clearly stated" and to which the consumer did not

"specifically consent[]."  The State does not allege any details about when Roku entered into a transaction seeking waiver from a Michigan resident, or what waiver Roku ever sought or claimed.  *See id.*; *Lesatz v. Standard Green Meadows*, 164 Mich. App. 122, 128 (1987); *Mays v. Universal Utilities, Inc.*, 2022 WL 1592374, *4 n.4 (Mich. Ct. App. May 19, 2022).

## B.    The State Fails to Allege Violations of Subsections (c), (cc), and (s)

Subsections (c), (cc), and (s) prohibit misrepresentations about the "characteristics" of goods or services, M.C.L. § 445.903(1)(c); omissions about consumer transactions, *id.* § 445.903(cc); and omissions of material facts, § 445.903(s).  The State alleges they were violated by two sets of misrepresentations.

Category 1—Misrepresentations About Collecting Children's Information

First, the State says that Roku "misrepresents its data-collection practices on Kids and Family."  ECF 1, PgID 40 ¶ 102.  It points to 2019 reports that Roku "collect[s] only 'non-user-level data,'" when it "collects user-level, personal information."  *Id.*  These statements are not Roku's words, but rather a blogger's characterization on techcrunch.com.  *Id.*, PgID 14 ¶ 39 n.18, PgID 50 ¶ 154.

An MCPA claim cannot be based on vague and unattributed statements.  *See Innovation Ventures, L.L.C. v. Aspen Fitness Prods., Inc.*, 2015 WL 11071470, *20 (E.D. Mich. Mar. 31, 2015) (Murphy III, J.).  The State does not allege that any Michigan resident saw or relied on the blogger's account.  Nor does it explain why anyone would read this stale third-party statement and reasonably rely on it for Roku's present practices.  The basic requirements for fraud are not met.  *Magda v. Auto. Club Ins. Ass'n*, 2015 WL 13036945, *6 (E.D. Mich. April 28, 2015).

-16-

More fundamentally, the State's own allegations undermine its claim of a false statement. The State asserts that, "by not providing children's profiles, Roku ensures … that it collects" both children's personal information alongside their parents," that parents' Roku accounts are used by their children, and that Roku collects information from both without regard to age. ECF 1, PgID 27 ¶ 72, PgID 12 ¶ 32. The State cannot have it both ways—allege that Roku collects all data for an account indiscriminately, but then allege that Roku collects user-level information from children in order to manufacture a misrepresentation. *Leaf v. Nike, Inc.*, 2020 WL 12230315 (E.D. Mich. Nov. 23, 2020) (Murphy III, J.) ("both contentions cannot be true"); *Leaf v. Refn*, 742 F. App'x 917, 927 (6th Cir. 2018).

Second, the State claims that Roku's Privacy Policy "falsely and misleadingly denies knowledge" of its practices concerning children's data. ECF 1, PgID 40-41 ¶ 103; *see also id.,* PgID 50 ¶ 154. The statements at issue are made pursuant to state privacy law requirements detailed in a "Supplemental U.S. State Law Privacy Notice," which Roku explains is limited to residents of 15 designated states (not Michigan). *See* Privacy Policy, Part VI. Supplemental U.S. State Law Privacy Notice. The notice indicates that Roku does not have "actual knowledge" it sells, processes, or shares for cross-context behavioral advertising the "Personal Information" of children. ECF 1, PgID 40-41 ¶ 103.

These statements cannot be the basis for an MCPA claim when they were not made to Michigan consumers and say nothing about Roku's data practices in Michigan. "An allegation of fraud based on [statements] made to a third party does not constitute a valid fraud claim." *Int'l Bhd. of Elec. Workers, Loc. Union No. 58*

*v. McNulty*, 214 Mich. App. 437, 447 (1995); *Stephens v. Availity, L.L.C.*, 2019 WL 13041330, *7 (M.D. Fla. Oct. 1, 2019).

As explained above, the State's own allegations defeat its falsity. "Actual knowledge" is a legal concept borrowed from COPPA, and these legally required disclosures should be construed considering that statutory context. 15 U.S.C. §§ 6501, 6502. It is not enough that an operator should know children are likely using its service; they must know that a <u>particular user</u> is a child under 13. FTC FAQ H.6 (https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions); *In re Alphabet Deriv. S'holder Litig.*, 2022 WL 1045642, *1 (N.D. Cal. Apr. 7, 2022) (the website operator has "[a]ctual knowledge" only if it "learns an individual user is a child through the entry of a birthdate, birthyear, or current grade in school."). But the State admits Roku accounts (tied to adult registrant information) can be shared by multiple users, that Roku does not use individual user profiles or know the identity of those users outside of the registered accountholder, and that Roku collects data without distinguishing between users or their age. *See* ECF 1, PgID 12 ¶¶ 32, PgID 27 ¶ 72, PgID 29 ¶ 75.

<u>Category 2—Misrepresentations About Collecting all User's Information</u>

First, the State takes issue with an account setting titled "Do not share or sell my personal information." ECF 1, PgID 27-28 ¶ 72. The State says the title is misleading because Roku does not prevent the sharing of all personal information. *Id.* This title uses precise language required by California laws that mandate the setting. *See* Cal. Civ. Code 1798.135(a)(1); 11 CCR § 7000 *et seq*. No one can assume it stops all data sharing given the explanatory text immediately below it.

That text confirms the option is limited to sharing for "cross-context behavioral advertising" or "targeted advertising," with explanations of what those are.  ECF 1, PgID 41 ¶ 104.  There is no allegation that this type of sharing is not stopped.[6]

Second, the State takes issue with the "Limit Ad Tracking" setting, a "historical[]" optional setting.  ECF 1, PgID 42-43 ¶ 107.  The State cites a 2019 study about ad tracking activities third party apps (unaffiliated with Roku).  But the Complaint does not even allege what Roku told users about the setting.  These failures in pleading the specifics within the limitations period are fatal.  *See Burniac*, 2015 WL 401018, *18; *Brady v. Chase Home Fin.*, LLC, 2012 WL 1900606, *10 (W.D. Mich. May 24, 2012) (requiring "factual 'meat'" for bare-bones claims, not "merely parrot[ing] the statute").

## IV.  THE SIXTH CAUSE OF ACTION FAILS TO ALLEGE A CLAIM FOR INTRUSION UPON SECLUSION

The Complaint offers two intrusion theories.  One derives the tort from the alleged statutory violations.  The other holds Roku secondarily liable for alleged misconduct by third-party measurement providers like Kochava.  Neither is valid.

### A.  Intrusion Does Not Accrue from The Alleged Statutory Violations

An intrusion claim concerns the defendant's acquisition of private information about the plaintiff.  Its gravamen lies not in the use or disclosure of private

---

[6] The accompanying text also explains that the setting applies "based on where you live."  This requires consumers to investigate their state's requirements before relying on their understanding.  Assuming the setting stops all data sharing is unreasonable when Michigan does not even require that Roku offer it.  *See Kussy*, 2006 WL 3447146, *7 (no MCPA claim without "reasonable reliance").

information, but its wrongful collection in a manner "objectionable to [a] reasonable man." *Tobin v. Civil Serv. Comm'n*, 416 Mich. 661, 673-74 (1982); *Garback v. Lossing*, 2010 WL 3733971, *7 (E.D. Mich. 2010).

The State cannot state an intrusion claim based solely on alleged VPPA, PPPA or MCPA violations. They address different harms. The VPPA and PPPA "focuses on what information a video service provider 'knowingly discloses'", not "the manner in which information is obtained". *Eichenberger*, 876 F.3d at 985 (VPPA/PPPA); *Doe v. Mills*, 212 Mich. App. 73, 88 (1995) (MPCA). MCPA claims are based on misrepresentations and omissions, not on how data is collected.

Moreover, commercial collection of data is routine, not intrusion. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). It is not objectionable for a platform to know how users are interacting with its service. Users *expect* Roku to have that information so it can perform the functions they request on Roku. *See Farst v. AutoZone, Inc.*, 700 F. Supp. 3d 222, 230 (M.D. Penn. 2023) (shopping on a public website analogized to shopping in a public store); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (no cognizable privacy interest in browsing data).

Intrusion cannot be derived from a mere COPPA violation either. The State alleges Roku collects all data for an account, without distinguishing between users. That alleged conduct is not objectionable just because some of the users may, unbeknownst to Roku, be children under 13. *See Hubbard v. Google LLC*, 2024 WL 3302066, *8 (N.D. Cal. July 1, 2024) (no intrusion claim for child users alleging collection of searches run, videos watched, GPS, advertising ID, and device

information).  "[R]outine behavior, including the collection of internet-browsing data and persistent identifiers, does not obtain a more-offensive status merely because [it] happened to involve a child[.]"  *Id.* at *8.

**B.    Roku Is Not Secondarily Liable for Intrusion, Either**

In addition, the State claims Roku is liable for third parties' geolocation collection practices.  *See* ECF 1, PgID 51-52 ¶¶ 164-69.  The State refers to Kochava by name and to a catchall group of "data brokers and advertising attribution providers" who allegedly engage in improper practices.

The State Supreme Court has yet to bless a common-law claim for aiding and abetting a tort.  Still, the Sixth Circuit has predicted that, "if faced with the opportunity," it would follow the Restatement and require (1) "knowledge of" and (2) "substantial assistance of the wrongful conduct."  *El Camino Res. Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922 (6th Cir. 2013).  These facts matter and must be pled to state an aiding and abetting claim.  *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1346-48 (E.D. Mich. 2011).

The Complaint fails to identify any proper basis to hold Roku secondarily liable.  There is no allegation that Roku knew about Kochava's secret collection of geolocation data.  Current knowledge (if any) that Kochava is under investigation does not imbue Roku with actual knowledge of wrongful practices.  Nor does the State allege that Roku was a "substantial factor" or "proximate cause" for wrongdoing.  *Theriot v. Woods*, 2010 WL 623684, *9 (W.D. Mich. Feb. 18, 2010).  That Kochava is a preferred measurement provider of Roku in no way endorses, contributes to, or causes any specific misconduct by Kochava.  ECF 1, PgID 32-33

¶ 83.  The State's basis for holding Roku secondarily liable for the catch-all group is even more lacking, about which the State alleges virtually nothing.

## V.   THE SEVENTH CAUSE OF ACTION FAILS TO ALLEGE A CLAIM FOR UNJUST ENRICHMENT

The State's unjust enrichment claim is largely derivative of its other claims. *See* ECF 1, PgID 53 ¶¶ 176-177.  Because those claims fail, this claim fails.  *See Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 731 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001); *see also Pacheco v. Boar's Head Prov's Co.*, 2010 WL 1323785, *4 (W.D. Mich. Mar. 30, 2010) (no need for independent claim when damages offer adequate remedy at law).

Further, a plaintiff must allege that the defendant received a benefit from the plaintiff and that it was inequitable for the defendant to retain it.  *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993).  This requires a ***direct*** tie or interaction so that the benefit comes at the plaintiff's expense.  *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) (Murphy III, J.); *Hubbard*, 2024 WL 3302066, *6.  There is no such tie to the State alleged.

Dated: July 14, 2025                    Respectfully submitted,


By: _s/Victor H. Jih_
Victor H. Jih, CA SBN 186515
Kelly H. Yin, CA SBN 328380
Wilson Sonsini Goodrich & Rosati, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com

Brian M. Willen, P75110
Dylan Grace Savage, CA SBN 310452
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
dsavage@wsgr.com

*Attorneys for Defendant Roku, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System, which will provide notice of such filing to all parties and counsel of record.

By: /s/ *Victor H. Jih*
Victor H. Jih