UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DANA NESSEL, Attorney General of the State of Michigan, *ex rel*. THE PEOPLE OF THE STATE OF MICHIGAN,<br><br>      *Plaintiff*,<br><br>  v.<br><br>ROKU, INC.,<br><br>      *Defendant*. | Case No.: 2:25-CV-11221-SJM-CI<br><br>HON. STEPHEN J. MURPHY, III<br>MAG. JUDGE CURTIS IVY, JR. |

## **DEFENDANT ROKU'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD THROUGH SEVENTH CAUSES OF ACTION**

Victor Jih, CA SBN 186515
Kelly H. Yin, CA SBN 328380
Wilson Sonsini Goodrich & Rosati, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com

Gerald J. Gleeson, II (P53568)
Miller Canfield Paddock & Stone PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com

Brian M. Willen, P75110
Dylan Grace Savage, CA SBN 310452
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com
dsavage@wsgr.com

*Attorneys for Defendant*
ROKU, INC.

## I. *PARENS PATRIAE* DOES NOT AUTHORIZE THE STATE TO ASSERT ITS RESIDENTS' INDIVIDUAL CLAIMS

The State's articulation of *parens patriae* is overbroad and clearly wrong. It claims authority to bring its citizens' claims as long as they concern the "health and well-being" of a "sufficiently high proportion" of them or the "type of social problem … [it] might address through legislation." ECF 16, PgID 129. That places no limit on *parens patriae*—anything could affect well-being and be the subject of law-making. The sale of 1.6 million defective pressure cookers certainly would, which would mean that the Sixth Circuit got it wrong in *Chapman*. It also flouts the Supreme Court's edict that the modern doctrine be narrow. "Formulated so broadly, the concept risks being too vague to survive the standing requirements of Article III." *Snapp v. Puerto Rico*, 458 U.S. 592, 602 (1982).

The notion that the State may take for itself damages claims that belong to its citizens overreaches. *Parens patriae* standing is the exception, not the rule—for injunctive relief or damages to the State for a collective interest. It does not permit claims that "are indistinguishable from the [ones] which individual [citizens] might raise," *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 306 (6th Cir. 2019). This is so even if the State promises to share proceeds with those citizens—there is no "legitimate quasi-sovereign interest in seeing that [any] group of persons receive a given sum of money." *Pa. v. Mid-Atlantic Toyota Distribs. Inc.*, 704 F.2d 125, 129 n.8 (4th Cir. 1983). The State makes three errors to arrive at its wrong answer.

<u>First</u>, it ignores the need for an independent ***collective*** or ***communal*** interest. The State's selective quoting of caselaw omits a key part—the doctrine is

not satisfied with an interest "in the health and well-being … of its residents" but requires a threat to an interest "in the health and well-being … of its residents *in general*." *Snapp*, 458 U.S. at 607 (emphasis added). That is, an interest of the citizenry "as a whole," *Chapman*, 940 F.3d at 306, that may not be "wholly derivative" of its residents' interests, *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 772-73 (5th Cir. 2023), but an "interest apart from that of the individuals," *Snapp*, 468 U.S. at 605, that "exceed[s] the interests of the particular residents," *Skrmetti v. Ideal Horizon Benefits*, 2024 WL 4351650 at *11 (E.D. Tenn. Sept. 30, 2024), such that the "real-party-in-interest" is the "public generally." *Ohio v. GMAC*, 760 F. Supp. 2d 741, 746-48 (N.D. Ohio 2011).

That is missing here. This case is similar to *GMAC*, where Ohio was prohibited from asserting its citizens' claims for bad foreclosure practices; while Ohio's action was "welcome news for any GMAC mortgagor about to lose his or her home," it was "of little interest to most other Ohio residents" with no GMAC mortgage. 760 F. Supp. 2d at 749-50. This is not a situation where there is a need to protect the state as "an honest marketplace," *id.* at 748-49; *see also Ideal Horizon Benefits*, 2024 WL 4351650 at *11, to prevent discrimination or stigmatization of the state, *Snapp*, 458 U.S. at 609, or to vindicate a state's authority, *Tenn. v. Cardona*, 737 F. Supp. 3d 510, 553 (E.D. Ky. 2024). *Balderas* permitted New Mexico to seek injunctive relief, nominal damages and punitives to generally protect children from the "negative consequences" of "monitoring, profiling, and tracking of them over time, across devices, and across the Internet". *Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1124 (D.N.M. 2020). It did not, however, authorize

New Mexico to pursue others' damages claims like Michigan wants, even for "the purpose of obtaining relief for particular victims." *Id*.

Second, the State wrongly suggests that any issue "amenable to legislation" can justify its taking of individual claims. ECF 16, PgID 132. Framed so vaguely, any overlap with an existing topic of legislation would confer *parens patriae* standing no matter how general. That cannot be right when courts have found "little reason for the state legislature to act" where "there are already laws ***prohibiting the [challenged] conduct generally***" and the legislature has not shown "some inclination to pass ***targeted legislation to address one particular company's questionable practice***". *GMAC*, 760 F. Supp. 2d at 749-50 (emphasis added).

The correct inquiry is instead whether the specific concern at hand would likely spur special legislative action. In *Ideal Horizon Benefits*, the legislature acted by responding with lawmaking that "deal[t] directly" with the specific consumer protection and home lending practices challenged in the lawsuit. 2024 WL 4351650 at *11. In contrast, the State here points to general and longstanding legislation around privacy interests. ECF 16, PgID 131-33. Both concern privacy generally, but neither suggests any legislative need to specifically address Roku's alleged conduct. *GMAC*, 760 F. Supp. 2d at 750.

Third, a quasi-sovereign interest does not extend to all damages claims. ECF 16, PgID 133-34. Monetary relief must relate to the quasi-sovereign interest. Thus, in *Alaska Sport Fishing Ass'n*, Alaska could recover "damages on behalf of the public for the public's loss of use and enjoyment of natural resources." 34 F.3d at 769, 771-72, 774 (9th Cir. 1994). That recovery has res judicata effect on private

claims. To prevent broad preclusion, the Ninth Circuit made clear that *parens patriae* did not extend to "uniquely private claims," such as an injury to an individual fisherman's boats, tackle, or equipment. *Id.* at 771-72 n.2, 773-74 n. 6. The State's claims here are "uniquely private" to each individual too, since their validity depends on the data, the disclosure, and the details of any injury.

Finally, the State never answers Roku's due process concerns, but pooh-poohs them as issues the parties can fight about later. It is one thing to press ahead with claims tied to a clear sovereign interest. It is quite another to mass adjudicate the claims of individuals without identifying representatives or delineating whose claims are being decided. This creates a moving target with no clear rules of engagement. The State may cling to a myth of helping helpless residents, but in reality, this action amounts to mass takings that will most benefit not the state or its people, but a plaintiffs' firm forcing Michigan residents to accept a not-asked-for contingency fee on their individual claims. This haircut is particularly galling with respect to the VPPA's statutory damages, which Congress vested in "persons aggrieved," not the State or its hired guns from out of state. Modern *parens patriae* is narrow and wisely steers clear of this morass.

**II.    EVEN IF THE STATE COULD BRING THESE NON-COPPA CLAIMS, ITS ALLEGATIONS FAIL AS A MATTER OF LAW**

    **A.    The State Fails to Properly Allege Any VPPPA/PPPA Claims.**

None of the specific examples alleged are actionable under either the VPPA or PPPA. As the Motion explains, the URL examples with video titles do not identify individuals; and the Innovid and Tremor cookie examples with geolocation

data do not specify any video titles.  Neither discloses PII.  ECF 11, PgID 98-105.

The State posits that it can rely on conclusory allegations where it recites that the various required elements are satisfied.  It does not argue that its examples are actionable or provide other examples that are.  It provides no specific facts.  The State's position is irreconcilable with a court's duty to ensure the pleadings advance cognizable and plausible claims.  Without specifics, the Court cannot determine whether a disclosure is identifying.  *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (disregarding "generalized allegations"); *Edwards v. Learfield Commc'ns*, 697 F. Supp. 3d 1297, 1308 (N.D. Fla. 2023).

The State ignores the greater problem—its allegations in the Complaint preclude the violation of either statute.  The VPPA requires disclosure of "***a person*** as having requested or obtained specific video materials."  18 U.S.C. § 2710(a)(3) (emphasis added).  The PPPA requires disclosure of an "***identifiable customer***."  MCL §§ 445.1711(a), 445.1712(1) and (2) (emphasis added).  The State makes clear, however, that such disclosures are implausible.  It alleges that Roku accounts and devices can be shared, there are no separate user profiles, and Roku collects data without first ascertaining which user it comes from.  Information Roku collects about the device can only be associated with the adult account holder, because Roku does not know who is using the device.  Thus, by the State's own admission, Roku cannot possibly be disclosing user-level video history.

### B.     The State Fails to Properly Allege A Violation of the MCPA.

The State still fails to identify any representation (or omission) that fits within one of the five subsections it claims is violated.  It never identifies a representation

-5-

(or omission) by Roku about *legal rights* or that purports to be a *waiver*. Instead, the State claims that Roku allegedly lied when representing that it did not collect, sell, share, or target with user-level data. It does not meaningfully address Roku's arguments regarding why its MCPA claim fails. Additionally, given the concessions that Roku does not collect user-differentiated data, any statements to that effect are not actionable misrepresentations.

C.     The Allegations Do Not State Any Viable Claim for Intrusion.

The Opposition concedes that its intrusion claim must be based on the offensiveness of how data was collected. Both parties look to *Hubbard*, which supports the dismissal of claims that lack offensiveness. That case held that tracking "individuals over 80% of the internet" is not offensive, even if it includes the activities of children. *Hubbard v. Google LLC*, 2024 WL 3302066 at *2 (N.D. Cal. July 1, 2024). That Roku keeps track of the activity on its *own* platform is not offensive, but *expected* by users who want a smart experience that is responsive to their requests. *Cf. Popa v. Microsoft Corp.*, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (not offensive for "a store clerk's observing shoppers in order to identify aisles that are popular or to spot problems"). The cited allegations do not give rise to a claim. Paragraphs 98, 99, 106 and 107 of the Complaint concern retention, use or disclosure, not collection. Paragraph 39 refers to a stale press report that Roku collects only "non-user level data." That fairly characterizes Roku's collection which the pleading concedes is done without differentiating between users.

The State fares no better with its secondary liability theories. It purports to address "knowledge" and "assistance," but ignores the nexus each requires. It is not

enough for Roku to know Kochava's interest in geolocation data; there are no allegations that Roku ***knew*** anything about any specific misconduct.  It is also not enough that Roku "partners" with Kochava in other benign ways as one of its attribution vendors; there are no allegations that anything Roku has done has caused or contributed to the alleged misconduct.  There is no valid basis for saying Roku tortiously intruded by aiding and abetting third-party misconduct.

### D.    The State's Unjust Enrichment Claim Also Fails.

The State concedes this claim must allege a benefit to Roku at the expense of plaintiffs.  It now argues that the data at issue provides the obvious tie between that benefit and loss, but cites no authority to support this theory.  To establish loss, a plaintiff must allege a market for the plaintiff to sell her data, that the plaintiff could and sought to participate, and subsequent inability to do so.  This theory only works if the data "has independent economic value to an individual user"—that is, someone else would have bought it from the plaintiff as a stand-alone product.  *In re Facebook*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019); *see In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 799 (D.N.J. 2025) (collecting cases).  The State has alleged no market where its residents could and tried to sell their own data, let alone that Roku deprived them of the ability to participate in any market.  Without a loss of such economic value to its residents, the unjust enrichment claim also fails.

Dated: September 9, 2025                    By: *s/ Victor Jih*
                                                                                 Victor Jih, CA SBN 186515
                                                                                 Wilson Sonsini Goodrich & Rosati, P.C.
                                                                                 1900 Avenue of The Stars, 28th Floor
                                                                                 Los Angeles, CA 90067
                                                                                 Telephone: (424) 446-6900
                                                                                 vjih@wsgr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2025, I electronically filed the foregoing papers with the Clerk of the Court using the ECF System, which will provide notice of such filing to all counsel of record.

By: /s/ *Victor Jih*
Victor Jih