UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTORNEY GENERAL DANA
NESSEL,

        Plaintiff,

v.

ROKU, INC,

        Defendant.
                                        /

Case No. 2:25-cv-11221

HONORABLE STEPHEN J. MURPHY, III

## ORDER REQUIRING SUPPLEMENTAL BRIEFING

Michigan Attorney General Dana Nessel, on behalf of the People of the State of Michigan, sued Defendant Roku, Inc. for seven causes of action related to Roku's data collection and dissemination practices. ECF No. 1. Defendant moved to dismiss certain claims. ECF No. 11. Defendant argued, in part, that Plaintiff did not have *parens patriae* standing to bring causes of action three, four, six and seven. *Id.* at PageID.94–98. The Court held a hearing on Defendant's motion to dismiss on November 19, 2025. Because the Court still has some legal questions, it will require supplemental briefing on the following issues: (1) prudential versus jurisdictional standing and (2) federal versus state law.

I.     Prudential v. Jurisdictional Standing

*First*, the Court desires supplemental briefing on prudential versus jurisdictional standing. Most courts hold that jurisdictional standing and *parens patriae* standing, as a form of prudential standing, are distinct concepts. *See*

1

*Massachusetts v. EPA*, 549 U.S. 497, 540 n.1 (2007) (Roberts, C.J., dissenting) (explaining that parens patriae standing is prudential and cannot substitute for the constitutional minimum under Article III); *In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 534 (S.D.N.Y. Apr. 15, 2014) (collecting cases); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99–100 (1979) (explaining that "a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim").

Here, the Court sees two separate standing issues: (1) whether Plaintiff has jurisdictional standing to bring all the causes of action, and (2) whether Plaintiff, as the State, has *parens patriae* (prudential) standing to bring causes of action three, four, six and seven. Although the briefing and motion hearing covered *parens patriae* extensively, discussion of jurisdictional standing was limited. At times, jurisdictional standing was discussed in conjunction with *parens patriae* standing. What is more, at the beginning of the hearing, Defendant briefly alluded to jurisdictional standing, statutes granting rights of action, and *parens patriae* standing. *See* ECF No. 28, PageID.270–271.

The Court seeks clarity on the issue because it must assure itself of its own jurisdiction as to all the claims brought by Plaintiff, regardless of the particular claims Defendant moved to dismiss. *Steigerwald v. Comm'r of Soc. Sec.*, 48 F.4th 632, 636 (6th Cir. 2022). The Court will therefore order the parties to submit supplemental

briefing explaining why Plaintiff does or does not have Article III standing to bring all seven causes of action.

The parties may also make any additional arguments with regard to *parens patriae* standing. They may address Plaintiff's argument made in its briefing and at the motion hearing that Defendant's alleged conduct is "the type of social problem . . . that a state might address through legislation." ECF No. 16, PageID.132; *see also* ECF No. 28, PageID.296–297. And they may address the argument that Roku users may be unable to bring claims on their own, noted in footnote six of Plaintiff's response brief, ECF No. 16, PageID.135, and discussed at the hearing, ECF No. 28, PageID.291–292.

II.   Federal v. State Law

*Second*, the Court will direct supplemental briefing on how to assess the state law claims versus the federal law claims. The Court sees two sub-issues: (1) what to make of broad statutory authorization under Michigan law for the Attorney General to enforce state law and (2) whether the case involves Michigan's sovereign interest in the enforcement of state law.

   A.   *Statutory Authorization*

The first sub-issue concerns statutory authorizations for state Attorney Generals to enforce the law.

Because prudential standing is different from jurisdictional standing, courts have held that when prudential standing rules would otherwise bar it, Congress may expand the ability of states to bring *parens patriae* suits to the full extent allowed by

3

Article III. *See In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d at 534; *cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (holding that Congress cannot expand the judicial power beyond the limits of Article III).

Here, Congress did not expand the ability of states to bring *parens patriae* suits for violations of the federal Video Privacy Protection Act. But the Michigan legislature gave the Michigan Attorney General broad authority to enforce Michigan law and to litigate on behalf of the people of Michigan. *See In re Certified Question from U.S. Dist. Ct. for E. Dist. of Mich.*, 465 Mich. 537, 543–45 (2002). In fact, she has "the same rights possessed by other parties to a suit." *Id.* at 544.

Notably, Roku did *not* move to dismiss the Michigan Consumer Protection Act (MCPA) claim for lack of standing. As Roku's brief acknowledges, under the MCPA, "only the State's Attorney General can seek the civil penalties requested here." ECF No. 11, PageID.94 n.1. The Court assumes that Roku agrees that there is standing for the MCPA claim. But why? Perhaps it is because, as a matter of Michigan law, the Attorney General enforces the MCPA. Under that logic, if the Attorney General can also enforce the PPPA, wouldn't the State have prudential standing to bring the PPPA claim as well as the other state law causes of action? In other words, prudential standing for the state law claims may turn on the Attorney General's powers under Michigan law.

  B.  *Sovereign Interest*

The second issue is whether the claims under Michigan law are an assertion of Michigan's sovereign interest, *i.e.*, "the power to create and enforce a legal code, both

4

civil and criminal." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982). Under that theory, Michigan would have a sovereign interest in enforcing Michigan law, but not federal law, against corporate entities like Roku that operate within the state. *See* Tara L. Grove, *When Can a State Sue the United States*, 101 Corn. L. Rev. 851, 862 (2016) ("A State has special standing to assert its interest in enforcing, and protecting the continued enforceability of, its *own state law*.").

Roku argued that Michigan lacks a quasi-sovereign interest in several claims under federal and state law. *See* ECF No. 11, PageID.94–98. But sovereign and quasi-sovereign interests are not the same. *Snapp*, 458 U.S. at 602 ("Quasi-sovereign interests . . . are not sovereign interests . . . ."). And Roku did not argue that Michigan lacks a *sovereign* interest in the enforcement of state statutes like the Preservation of Personal Privacy Act. *See* ECF No. 11. Thus, even if Roku is right about the lack of a quasi-sovereign interest, that might not impact the viability of the state law claims asserted.

"Paramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022). According to the complaint, Michigan wants "to require Roku to comply with . . . state law." ECF No. 1, PageID.3. Before the Court stops the state from enforcing state law, it needs more analysis on the distinction between sovereign and quasi-sovereign interests.

**WHEREFORE**, it is hereby **ORDERED** that the parties must each **SUBMIT** the above-described supplemental briefing **no later than January 16, 2025.** The briefs should not exceed fifteen pages.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 8, 2025