# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| DANA NESSEL, Attorney General of the State of Michigan, *ex rel*. THE PEOPLE OF THE STATE OF MICHIGAN, | Case No.: 2:25-CV-11221-SJM-CI |
| *Plaintiff*, | HON. STEPHEN J. MURPHY, III |
| v. | MAG. JUDGE CURTIS IVY, JR. |
| ROKU, INC., | |
| *Defendant*. | |

## <u>DEFENDANT ROKU, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Victor Jih, CA SBN 186515
Kelly H. Yin, CA SBN 328380
Wilson Sonsini Goodrich & Rosati, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com

Gerald J. Gleeson, II, P53568
Miller Canfield Paddock & Stone PLC
840 West Long Lake Road, Suite 150
Troy, Michigan 48098
Telephone: (248) 267-3296
gleeson@millercanfield.com

Brian M. Willen, P75110
Dylan Grace Savage, CA SBN 310452
Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 999-5899
Facsimile: (866) 974-5800
bwillen@wsgr.com
dsavage@wsgr.com

*Attorneys for Defendant*
ROKU, INC.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL VS. PRUDENTIAL STANDING ........................................... 1

Q1:  Does the Michigan AG Have Jurisdictional Standing Under
     Article III to Bring All Seven Causes of Action? ................................ 1

Q2:  Does the State of Michigan Have Prudential Standing to Bring
     Causes of Action Three, Four, Six and Seven? .................................... 8

FEDERAL VS. STATE LAW ................................................................................. 13

Q1:  What to Make of Broad Statutory Authorization Under
     Michigan Law for the Attorney General to Enforce State Law? ....... 13

Q2:  Whether This Case Involves Michigan's Sovereign Interest in
     the Enforcement of Its State Law? ...................................................... 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrams v. 11 Cornwell*,
695 F.2d 34 (2d Cir. 1982) ...................................................................................12

*Abrams v. Heckler*,
582 F. Supp. 1155 (S.D.N.Y. 1984) ...................................................................11

*N.Y. ex rel. Abrams v. Seneci*,
817 F.2d 1015 (2d Cir. 1987) ...............................................................................8

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
458 U.S. 592 (1982).....................................................................................*passim*

*Ariz. v. Biden*,
40 F.4th 375 (6th Cir. 2022) ..................................................................................2

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................12, 13

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ..........................................................................6

*In re Cardizem CD Antitrust Litig.*,
465 Mich. 537 (2002) ..........................................................................................13

*In re Certified Question*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................13

*Chapman v. Tristar Prods., Inc.*,
940 F.3d 299 (6th Cir. 2019) ...........................................................................9, 10

*Clapper v. Amnesty Int'l USA*,
567 U.S. 398 (2013)...............................................................................................3

*Conn. v. Phys. Health Servs. of Conn., Inc.*,
287 F.3d 110 (2d Cir. 2002) ..................................................................................9

*Cook v. GameStop, Inc .*,
689 F. Supp. 3d 58 (W.D. Pa. 2023).....................................................................6

*In re Dram Antitrust Litig.*,
2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) .....................................................8

*In re Elec. Book Antitrust Litig.*,
14 F. Supp. 3d 525 (S.D.N.Y. 2014) ...................................................................9

*Gladstone Realtors v. Vill. Of Bellwood*,
441 U.S. 91 (1979).......................................................................................12, 13

*Glasgow v. Beers*,
2024 WL 1210790 (N.D. Ohio 2024)..................................................................8

*Glenborough Homeowners Ass'n v. USPS*,
21 F.4th 410 (6th Cir. 2021) ...............................................................................8

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) ...............................................................7, 8, 12, 14

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)...........................................................................................13

*Klein v. Receivable Mgmt. Grp. Inc.*,
595 F. Supp. 3d 1183 (M.D. Fla. 2022)...............................................................7

*Mo. ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) .............................................................................12

*Lacewell v. Off. of Comptroller of Currency*,
999 F.3d 130 (2d Cir. 2021) ................................................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).......................................................................................9, 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).............................................................................................1

*Mass. v. E.P.A.*,
549 U.S. 497 (2007).........................................................................................1, 2

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .....................................................4, 6

*O'Leary v. Trustedid, Inc.*,
    60 F.4th 240 (4th Cir. 2023) ...................................................................................5

*Ohio v. GMAC Mortg., LLC*,
    760 F. Supp. 2d 741 (N.D. Ohio 2011) ..............................................................11

*In re Packaged Seafood Prods. Antitrust Litig.*,
    338 F. Supp. 3d 1079 (S.D. Cal. 2018)................................................................14

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) .................................................................................5

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ................................................................6

*Rifkin v. Bear Stearns & Co.*,
    248 F.3d 628 (7th Cir. 2001) ...............................................................................13

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..................................................6

*Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*,
    946 F.3d 951 (6th Cir. 2020) ...............................................................................14

*Salazar v. Paramount Glob.*,
    133 F.4th 642 (6th Cir. 2025) ...........................................................................5, 6

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................2, 5

*State v. Infineon Techs. AG*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007)................................................................8

*Stout v. JD Byrider*,
    228 F.3d 709 (6th Cir. 2000) ...............................................................................12

*Table Bluff Reservation v. Philip Morris, Inc.*,
    256 F.3d 879 (9th Cir. 2001) .................................................................................2

*In re TikTok, Inc.*,
    2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) ........................................................6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)............................................................................................4, 5

*Wilkinson v. Olympia Dev. of Mich. LLC*,
  2022 WL 4870781 (E.D. Mich. Oct. 3, 2022)......................................................7

## STATUTES

M.C.L. § 14.28 .....................................................................................................13

M.C.L. § 14.33 .......................................................................................................8

M.C.L. § 445.905(1) ............................................................................................15

M.C.L. § 445.1712(1) ..........................................................................................11

M.C.L. § 445.1715(2) ..........................................................................................14

## OTHER AUTHORITIES

Tara L. Grove, *When Can a State Sue the United States?*,
  101 Corn. L. Rev. 851, 862 & n.54 (2016).........................................................14

Amended Complaint, *Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*,
  2024 WL 4351650 (E.D. Tenn. Dec. 14, 2023)
  (No. 3:23-CV-00046-DCLC-JEM)..............................................................10, 11

The Attorney General ("AG") lacks standing to pursue any of her claims or remedies in federal court. The AG bears greater burdens to establish standing by casting herself as *parens patriae*. *Jurisdictionally*, she must demonstrate concrete injury to Michigan citizens, as well as establish a distinct injury to the State's quasi-sovereign interest that is traceable to Roku, and redressable by this Court. Her Complaint does neither. It pleads "what if" scenarios about how Roku's data practices might affect unidentified users, without alleging particularized harm to any Michigan resident or separate injury to the State itself. *Prudentially*, for the non-COPPA claims, the AG must satisfy an additional constraint: *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982), requires her to allege facts showing a sufficiently substantial injury to the health or well-being of residents in general, which must be more than the sum of hypothetical private harms to an undifferentiated subset of the population. The AG fails that test. And that failure infects the Michigan law claims as much as the federal claims, where any claim of a sovereign interest is even weaker than the assertion of a quasi-sovereign interest. The Court should dismiss all claims for lack of standing.

## JURISDICTIONAL VS. PRUDENTIAL STANDING

Q1:  Does the Michigan AG Have Jurisdictional Standing Under Article III to Bring All Seven Causes of Action?

Jurisdictional standing principles apply to all the claims here. Article III limits jurisdiction to "Cases" and "Controversies." *Mass. v. E.P.A.*, 549 U.S. 497, 516 (2007). The plaintiff must have suffered an injury in fact that is traceable to the defendant and redressable by the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560 (1992). While not "normal litigants," States must still meet these requirements. *Mass*., 549 U.S. at 518; *Ariz. v. Biden*, 40 F.4th 375, 385 (6th Cir. 2022) (Article III requirements "remain for private and public litigants alike"). To do so, the AG must establish an injury in fact to the State's proprietary, sovereign, or quasi-sovereign interests that is traceable and redressable.[1]

Proceeding as *parens patriae* requires the AG show both "injury in fact to the [State's] citizens," *Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001), and to the State's quasi-sovereign interest "apart from the interests of particular private parties," *Snapp*, 458 U.S. at 607; *see also Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 142 n.13 (2d Cir. 2021) (no standing without concrete injury to residents and the State). Both must be "concrete and particularized" and involve "a legally protected interest." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The AG has made neither showing.

Injury to the State's Citizens. The AG claims Michiganders face harm arising from violations of COPPA (the collection of personal information from a child), the VPPA/PPPA (the disclosure of video watch history that identifies the viewer), the MCPA (misrepresentation, reliance or likely confusion), and common law intrusion and unjust enrichment (offensive invasion of reasonable expectations of privacy and unfairly benefiting at another's expense). The AG's allegations are merely hypotheticals and fall short of demonstrating an injury in fact.

---

[1] Jurisdictional standing here cannot be based on Michigan's proprietary or sovereign interests. The AG alleges no harm to its proprietary interests. And there is no sovereign interest to enforce state law in federal court. *See infra* pp. 13–14.

-2-

*First*, the State has not alleged "an injury [that is] concrete, particularized, and actual," but has at most alleged circumstances in which injury is "possible," which is "not sufficient" under Article III. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 (2013) (rejecting "theories that rest on speculation" to satisfy Article III). It is undisputed that Roku collects and discloses data, ECF No. 1, PgID.25 ¶ 66, including when a shared Roku account or device is used, *id.*, PgID.2 ¶¶ 2–3. But the Complaint lacks concrete allegations that the use of a Roku shared device has led to anyone having their information handled in an actionable way.

It is the opposite—the Complaint concedes that what information can be inferred from a given use of a Roku device is highly variable, depending not just on the user but on third parties. Among the factors are: (1) how a user accesses Roku (*id.*, PgID.4 ¶ 15); (2) what part of The Roku Channel (like *Kids and Family*) is accessed (*id.*, PgID.7, 12–13 ¶¶ 23–24, 32–33); (3) which of the many thousands of third-party "channels" or "apps" is accessed (*id.*, PgID.5 ¶ 18); (4) whether a piece of content or channel/app has been misidentified (*id.*, PgID.12–13 ¶ 33); (5) the practices of the third-party provider, vendor, or partner who may receive data, or the companies who advertise on the platform (*id.*, PgID.13, 15–19, 29, 32 ¶¶ 35, 40–49, 75, 81); (6) what method or tool is used, where and when (*id.*, PgID.30–31 ¶¶ 78–79); (7) what information one may know independently of Roku and how useful it may be to identify someone (*id.*, PgID.33–36 ¶¶ 85–93); and (8) what assumptions one may indulge (*id.*, PgID.34 ¶ 87). The Complaint does not focus on specific practices or variables, does not discuss their prevalence among Michigan households, or show that any combination in fact occurred.

-3-

The Complaint's bid at showing injury thus depends on a chain of contingencies involving user behavior, third-party channels, adtech partners, and identifying inferences that may—or may not—apply to anyone. But it is well settled that a defendant's theoretical technological capability is not enough to establish concrete injury or a substantial risk of it. *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at \*5 (S.D. Cal. Jan. 22, 2024). Like here, the *Mikulsky* plaintiff failed to allege injury. *Id.* Even though the software in *Mikulsky* could disclose their personal information, actionable harm required that a specific version was used in a particular way, was active during the plaintiff's visit, and operated to link website sessions to specific users, and with their identifying information. *Id.*; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 434–38 (2021) (for inaccurate credit files to result in harm, there must be a third party requesting the file, the defendant releasing it, and the plaintiffs' credit being denied as a result).

The AG's examples offer nothing more than a series of "what-if" scenarios— but not actionable instances of harm. These examples—that SignalJump may collect an IP address (ECF No. 1, PgID.19 ¶ 51), that Roku may collect a device ID or user agent (browser) ID (*id.*, PgID.20 ¶ 52), or that a URL may contain a bare reference to a video (*id.*, PgID.30 ¶ 77)—are not by themselves actionable violations of law or instances of actual harm. Her concern that the personal data of children has been collected and disclosed through URLs or cookies on Roku's website (*id.*, PgID.13–14, 19 ¶¶ 36–38, 51) is particularly speculative, since she admits that children tend not to use the website and prefer a television or mobile app (*id.*, PgID.10 ¶ 28) and that Roku lacks user profiles that can be used to track them (*id.*, PgID.27 ¶¶ 71–72).

-4-

Instead, the AG proceeds on the premise that because children use Roku's products from which Roku collects device data, Roku necessarily collects their personal data—despite neither the AG nor Roku knowing who those children are, which data involves a child, or which child from whom the data was collected. This is insufficient. As to the MCPA, even assuming the existence of a misrepresentation, harm is unclear: the AG does not identify any instance where a resident saw a Roku statement, relied on it, or was misled. *See O'Leary v. Trustedid, Inc.*, 60 F.4th 240, 245 (4th Cir. 2023) (standing cannot be based on a "Rube Goldberg-type chain" of speculation and assumption).

*Second*, the AG also fails to allege a cognizable harm to a "legally protected interest" that gives rise to Article III standing. *Spokeo, Inc*., 578 U.S. at 339. Simply asserting statutory harms is not enough. While Congress can prohibit new forms of conduct by enacting statutes, there is no "concrete" harm under Article III "based only on [its] say-so." *TransUnion*, 594 U.S. at 426. A plaintiff must "identif[y] a close historical or common-law analogue." *Id.* at 424. A statute cannot be analyzed with a "one-size fits-all approach" for standing because some allegations will evince cognizable harm while others will not. *Popa v. Microsoft Corp.*, 153 F.4th 784, 792–93 (9th Cir. 2025). It requires looking at the "specific underlying harm experienced" *by the plaintiff* and comparing it to a "specific common-law tort." *Id.* at 790–92. This is so even for privacy; the specific injury allegedly experienced *by the plaintiff* must be "sufficiently analogous to a traditional harm." *Salazar v. Paramount Glob.*, 133 F.4th 642, 647 (6th Cir. 2025).

The specific privacy harms alleged here have no common-law analogue. To provide its service, Roku must collect data as users browse. The AG makes conclusory allegations that Roku collects "personal information" (ECF No. 1, PgID.2 ¶¶ 2–3), but fails to explain how the data identifies any actual person. She admits that Roku collects data "from all users" without "determining whether those users are children." *Id.*, PgID.12 ¶ 32. Roku has no user profiles. *Id.*, PgID.27 ¶¶ 71–72. It does not differentiate between users of a household device but aggregates at the account level, so it cannot "enable parents to identify when a child is using the service," "moderate" access, or target ads by user. *Id.* Because usage data is co-mingled, Roku cannot link particular data with the individual from which it was collected—not a child, household member, guest, or even account holder. *Id.*

Under common law, "non-individually identifiable data is insufficient to give rise to an injury-in-fact to support Article III standing." *Mikulsky*, 2024 WL 251171, at \*4; *Cahen v. Toyota Motor Corp*., 717 F. App'x 720, 724 (9th Cir. 2017); *see also Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at \*4 (W.D. Wash. Dec. 21, 2023) (collecting cases). In *Cook v. GameStop, Inc.*, the court dismissed a privacy action for lack of Article III standing because nothing "could connect [plaintiff's] browsing activity to her"—not a name, address, credit card number, or anything else. 689 F. Supp. 3d 58, 65–66 (W.D. Pa. 2023). In contrast, the cases upholding standing concern "disclosure of personally identifying information." *Salazar*, 133 F.4th at 645, 647 (VPPA); *see also In re TikTok, Inc.*, 2025 WL 3628598 at \*14 (C.D. Cal. Nov. 5, 2025) (COPPA); *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 668–69, 676–77 (E.D. Mich. 2022) (PPPA).

Similarly, the AG's MCPA claim lacks a common-law analogue without allegations of reliance or damages.  She identifies no resident confused or misled by any Roku statements, nor any instance of reliance, confusion, or harm traditionally required by common law.  *See supra* p. 5; *Wilkinson v. Olympia Dev. of Mich. LLC*, 2022 WL 4870781, at \*3 (E.D. Mich. Oct. 3, 2022); *Klein v. Receivable Mgmt. Grp. Inc.*, 595 F. Supp. 3d 1183, 1191 (M.D. Fla. 2022).  Even if the AG can state an MCPA claim without pleading these elements—she cannot—that still fails to show any cognizable injury for standing in federal court.

<u>Harm to a Quasi-Sovereign Interest</u>.  Assuming *arguendo* that these injuries somehow gave individual Michiganders standing, that still does not show harm to the State's quasi-sovereign interest, which must exist "apart from the interests of particular private parties."  *Snapp*, 458 U.S. at 607.  There is no pollution of public lands and waters, marketplace disruption, or cascading damage to the State's economy.  To be sure, because a quasi-sovereign interest is one "that the State has in the well-being of its populace," it is naturally derivative of the interests of citizens.  *Id.* at 602.  But unless the State can identify a <u>distinct</u> interest, separate from its citizens' interests, it is no more than a nominal party, and jurisdictional standing requires that the State "be more than a nominal party."  *Id*. at 602, 607.  The AG alleges only individual harms, not harms to the State generally or some distinct collective interest.  That fails to establish Article III standing.[2]

---

[2] At the hearing, the AG asserted an "interest in ensuring an honest and fair marketplace."  ECF No. 28, PgID.289.  As framed, such abstract and generalized interests are not concrete injuries.  Otherwise, states would automatically have Article III standing based just on generalized interest in law enforcement.  *See*

Further, the damages the AG seeks do not redress injury to a quasi-sovereign interest, thus the State lacks standing to seek them.  There must be standing for each form of relief sought.  *See Glenborough Homeowners Ass'n v. U.S. Postal Serv.,* 21 F.4th 410, 414 (6th Cir. 2021).  "[M]oney damages for injuries suffered by individuals . . . will not compensate the state for any harm done to its quasi-sovereign interests."  *N.Y. ex rel. Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987).[3]  Thus, *parens patriae* has "generally been limited to … injunctive or other equitable relief."  *In re Dram Antitrust Litig.*, 2007 WL 2517851, at *8 (N.D. Cal. Aug. 31, 2007); *see Glasgow v. Beers*, 2024 WL 1210790, at *5 (N.D. Mar. 20, Ohio 2024) (traditional *parens patriae* does not extend to monetary damages); *State v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1169 (N.D. Cal. 2007) (same).

The State taking damages awards fails to compensate citizens that claim to be harmed.  This is a real concern, since the AG has promised much of any recovery as a contingency fee, and M.C.L. § 14.33 requires depositing funds with the state Treasury.  In response to these concerns, the AG makes no promises—but confirms that private claims are precluded.  ECF No. 16, PgID.136.

Q2:   Does the State of Michigan Have Prudential Standing to Bring Causes of Action Three, Four, Six and Seven?

The State likewise lacks prudential standing for its non-COPPA claims.

---

*Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 772 (5th Cir. 2023) ("failure to follow state and federal law" does not injure the State's sovereign interest).

[3] This concern does not apply to the COPPA and MCPA claims.  Neither recognizes a private right of action for individual citizens.

Prudential principles further limit standing beyond what Article III requires.  These principles include "the general prohibition on a litigant's raising another person's legal rights" and "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).[4]

*Parens patriae* is a limited exception to those prohibitions.  The doctrine allows states to sue on behalf of citizens "in certain circumstances by asserting a 'quasi-sovereign interest.'"  *Conn. v. Phys. Health Servs. of Conn., Inc.*, 287 F.3d 110, 119 (2d Cir. 2002).  While jurisdictional standing focuses on the concreteness of this interest, prudential standing considers the *Snapp* factors assessing the magnitude of the interest.  *See In re Elec. Book Antitrust Litig.*, 14 F. Supp. 3d 525, 534 (S.D.N.Y. 2014) (the limitations set forth in *Snapp* "are prudential").

*Snapp* sets forth several guidelines.  The State's claims must be tailored to protect "the health and well-being—both physical and economic—of its residents in general."  *Snapp*, 458 U.S. at 607.  It requires injury to "a sufficiently substantial segment" of the population, considering both direct and indirect effects.  *Id.*  While there are no "definitive limits on the proportion of the population" required, "more must be alleged than injury to an identifiable group of individual residents."  *Id.*  That is, the harm must be to the State's "residents in general."  *Id.*; *see also Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 305–06 (6th Cir. 2019).

---

[4] Congress can override prudential standing requirements.  *See infra* p. 13; *cf.* ECF No. 30, PgID.318 ("Congress did not expand the ability of states" to sue for VPPA violations).  Michigan, however, cannot.  The AG need not satisfy prudential standing for COPPA, but must for the other claims, including the MCPA claim.

Because the *parens patriae* doctrine is an exception to the basic rule that the most directly injured party be the one to bring a claim, its requirements are not designed to be easily met. The AG carries the burden to allege the requisite facts. The Complaint, however, lacks the specific factual allegations needed. It alleges that millions of Michigan residents use Roku. But this is the wrong focus. What matters is whether a sufficiently substantial segment has been actually <u>harmed</u> or faces imminent harm. *Snapp*, 458 U.S. at 607. The prudential requirement is over and above the jurisdictional one: not only must the harms be concrete, they must be so widespread as to be akin to harm to the State itself, not merely to certain citizens. *See Chapman*, 940 F.3d at 305–06. As noted, the AG has not alleged a single instance of harm or person harmed. Even if she had, isolated individual injuries would not establish the widespread harm required. Nor has the AG alleged any concrete indirect downstream effect.

The Complaint's shortcomings in meeting these rigorous standards are demonstrated by comparing it to the pleadings in *Ideal Horizon*, where Tennessee and Kentucky were allowed to bring *parens patriae* claims. There, the complaint alleged that over 400 complaints were filed, specific residents lost medicine, food, and home electricity, and many residents suffered under high-interest loans. Amended Complaint, ECF No. 241, PgID.7089–7091, 7115–7116, 7121–7129, ¶¶ 78–90, 212–214, 249–303, *Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*, 2024 WL 4351650 (E.D. Tenn. Dec. 14, 2023) (No. 3:23-CV-00046-DCLC-JEM). But the complaint also alleged harm apart from those individuals: millions of dollars in loans were funneled out of the plaintiff states (*id.*, PgID.7111 ¶¶ 187–

191), local utilities had to clean up the collateral consequences (*id.*, PgID.7129–7137 ¶¶ 305–369), and some employees were electrocuted (*id.*, PgID.7134 ¶ 343). The AG's allegations here do not compare.

The conclusion that the State lacks prudential standing is underscored by a "helpful indication" noted by *Snapp*: "whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Snapp*, 458 U.S. at 607. Michigan could address the specific type of harm alleged here, but has elected not to. Instead, it passed legislation limited to a narrow class of injury that the AG does not, and cannot, plead—the collection of personally identifiable, as opposed to co-mingled, data. The PPPA limits its scope to "information that personally identifies." M.C.L. § 445.1712(1). The proposed MPDPA applies to "personal data" that is "linked or reasonably linkable to an identified or identifiable individual." S.B. No. 1182, § 2(r).

That these laws protect privacy misses the mark—the *Snapp* "indication" is not whether the State has enacted law on the same general subject, but whether it has addressed this injury. *Snapp*, 458 U.S. at 607. The PPPA and MPDPA reveal no "inclination to pass targeted legislation to address" these harms—they refute it. *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 750 (N.D. Ohio 2011). Pressing forward with judicial action before legislative action undermines the separation-of-powers concerns of standing. Some issues are "more appropriately addressed in the representative branches," *Lexmark*, 572 U.S. at 126, especially when lawmakers have not recognized an injury or "weighed the competing private interests," *Abrams v. Heckler*, 582 F. Supp. 1155, 1161 (S.D.N.Y. 1984).

-11-

Finally, the ability of Michigan residents to "seek private relief" for themselves also precludes prudential standing.  *See Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017); *Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982); *Harrison*, 78 F.4th at 773.  As noted by the Court in its supplemental briefing order, litigation should be maintained by those who are "best suited to assert a particular claim." *Gladstone Realtors v. Vill. Of Bellwood*, 441 U.S. 91, 99–100 (1979).  The persons best suited to assert claims here are those whose rights are alleged to have been violated.  They should decide whether their claims are brought, how they are litigated, and what benefits they will receive.

The AG says individuals cannot protect themselves, because Roku's terms mandate arbitration and prohibit class adjudication.[5]  ECF No. 30, PgID.317.  But Roku users can seek "complete relief"—they can arbitrate their claims.  *Abrams*, 695 F.2d at 40.  And in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court held that individual arbitration in lieu of class adjudication can actually make it *easier* for individuals to obtain redress, thanks to "efficient, streamlined procedures" that "reduc[e] the cost and increas[e] the speed of dispute resolution." *Id.* at 344–45; *accord Stout v. JD Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (noting arbitration is a "speedier and less costly" means of bringing claims).  The Supreme Court has recognized that individualized arbitration works

---

[5] The AG's stated concern about the loss of a class action makes little sense, as the AG's *parens patriae* action also takes that option away.  *See* ECF No. 28, PgID.298–299.  Worse still, the AG would take away the claims entirely, give a piece of any recovery to its contingent fee lawyers, and put the rest in the Treasury, with no promise any would ever reach the individuals.

even for "small-dollar claims," *Concepcion*, 563 at 351, but here, the claims have high-dollar statutory damages, further incentivizing individual actions.

## FEDERAL VS. STATE LAW

Q1:   <u>What to Make of Broad Statutory Authorization Under Michigan Law for the Attorney General to Enforce State Law?</u>

That Michigan authorizes its AG to bring suit does not change the federal standing analysis. "[S]tanding in federal court is a question of federal law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). While Congress can override prudential standing limitations, *Gladstone Realtors*, 441 U.S. at 99–100, states cannot, *Hollingsworth*, 570 U.S. at 715; *Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 633 (7th Cir. 2001) (prudential standing "must be answered with reference to federal law"). Thus, to bring the PPPA and MCPA claims, the AG must meet both the jurisdictional and prudential standing requirements.

Furthermore, even if reference to state law bore on the prudential analysis, which it does not, the AG's authority under M.C.L. § 14.28 is not so broad. The provision has been construed to allow a *parens patriae* action only where a valid quasi-sovereign interest exists, not where the AG is asserting the private claims of unnamed Michigan residents. *See In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 521 (E.D. Mich. 2003) (relying on *In re Certified Question*, 465 Mich. 537 (2002) interpreting M.C.L. § 14.28). There is no authority claiming that § 14.28 expands the scope of *parens patriae* or overrides its limits.

Finally, the propriety of the AG bringing residents' PPPA claims is not controlled by M.C.L. § 14.28, but by the PPPA. Specifically, the AG's ability to

bring suit turns on how narrowly the PPPA defines the "class of persons who can sue," and whether the AG falls within that. *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1094 (S.D. Cal. 2018). The PPPA limits its right of action to a "customer." *See* M.C.L. § 445.1715(2). Where the language is restrictive, the Court should "not bootstrap the statutory language to presume a sovereign entity could bring a public action under the same private provision without express authorization." *Packaged Seafood*, 338 F. Supp. 3d at 1101.

Q2:   Whether This Case Involves Michigan's Sovereign Interest in the Enforcement of Its State Law?

While "[a] State has special standing to assert its interest in enforcing, and protecting the continued enforceability of, its *own state law*," an alleged violation of such a law does not therefore establish a "judicially cognizable injury" for federal standing. Tara L. Grove, *When Can a State Sue the United States?*, 101 Corn. L. Rev. 851, 862 & n.54 (2016). The Sixth Circuit has made clear a violation of state law "does not by itself injure the government in an Article III way." *Saginaw Cnty., Mich. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 956 (6th Cir. 2020). Rather, to have a "cognizable injury," the State must be "hindered from enforcing its laws" in some appreciable way, and merely "[v]iolating the law is different from hindering its enforcement." *Harrison*, 78 F.4th at 770–72. Absent that, there is no justiciable sovereign interest. *Id.* at 772.

Nothing is currently preventing the State from enforcing its law. It has a full arsenal (including its own courts) with which it can compel compliance. But the AG cannot do so in federal court without establishing Article III standing.

## CONCLUSION

The AG does not have standing for any of her claims.

COPPA.  There is no jurisdictional standing.  The alleged harm is speculative, not actual.  And it is not cognizable under common law.

VPPA/PPPA/Intrusion.  The same obstacles to jurisdictional standing apply to these claims.  Further, the State lacks prudential standing because it failed to allege facts establishing that a substantial segment of residents face actual harm.  Lawmakers have not addressed the harms or weighed the policy interests for co-mingled data not linked to identified individual users.  And individuals claiming injury can seek relief in arbitration based on an actual record and not conjecture.

MCPA.  There is no standing because the alleged harm is speculative and not cognizable under common law given the absent elements of reliance and damages.  The AG "may bring an action . . . in the circuit court" of Michigan, M.C.L. § 445.905(1), but the State lacks standing in federal court.

Unjust Enrichment.  This claim depends on the viability of the other causes of action, and thus fails with them.

As the Court noted, "it must assure itself of its own jurisdiction as to all the claims" (ECF No. 30, PgID.316), but jurisdiction is lacking as to each.

Dated: January 16, 2026          By: *s/ Victor Jih*
                                 Victor Jih, CA SBN 186515
                                 Wilson Sonsini Goodrich & Rosati, P.C.
                                 1900 Avenue of The Stars, 28th Floor
                                 Los Angeles, CA 90067
                                 Telephone: (424) 446-6900
                                 vjih@wsgr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System, which will provide notice of such filing to all parties and counsel of record.

By: *s/ Victor Jih*
Victor Jih